**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

| | |
|---|---|
| CLINT SYLVESTER, Individually and For All Others Similarly Situated<br><br>v.<br><br>SOUTHERN CROSS, LLC | Case No. _____<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action |

## ORIGINAL CLASS ACTION COMPLAINT

### SUMMARY

1. Clint Sylvester ("Sylvester") brings this class action to recover untimely wages and other damages from Southern Cross, LLC ("Southern Cross").

2. Southern Cross is a utility services company that employs numerous people in New York State, a majority of whom are "manual workers" as contemplated by § 191 of the New York Labor Law ("NYLL").

3. For example, Southern Cross employed Sylvester as a Service Line Technician in New York.

4. Additionally, Southern Cross employs numerous "manual laborers" including under job titles such as Utility Surveyor, Utility Locator, and Damage Prevention Specialist.

5. Despite being manual workers, Southern Cross failed to properly pay Sylvester and its other Hourly Manual Workers (defined below) their wages within seven calendar days after the end of the week in which they earned such wages.

6. Instead, Southern Cross uniformly paid Sylvester and its other Hourly Manual Workers on a bi-weekly basis.

7. In this regard, Southern Cross failed to timely pay earned wages to Sylvester and its other Hourly Manual Workers.

8. As manual workers, Sylvester and the other Hourly Manual Workers are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

9. Accordingly, Southern Cross's failure to timely pay wages owed to Sylvester and the other Hourly Manual Workers constitutes an "especially acute injury" under NYLL § 191. *See Caul v. Petco Animal Supplies, Inc.,* No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 [N.Y. 1st Dept. 2019]).

### JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

11. Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of one member of Sylvester's proposed class of Hourly Manual Workers and Southern Cross are citizens of different states (indeed, Sylvester is a New York citizen, whereas Southern Cross is a Georgia citizen); and (c) the proposed class of Hourly Manual Workers exceeds 100 members.

12. This Court has specific personal jurisdiction over Southern Cross with respect to this action because Southern Cross employed Sylvester and the other Hourly Manual Workers in New York.

13. Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District. 28 U.S.C. § 1391(b)(2).

### PARTIES

14. Southern Cross employed Sylvester as a Service Line Technician in and around Westchester County, New York from approximately September 2021 until December 2021.

15. Sylvester lived in Brooklyn, New York during this period.

16. Sylvester was Southern Cross's covered "employee" within the meaning of the NYLL.

17. Throughout his employment, Sylvester worked for Southern Cross as a "manual worker" within the meaning of NYLL § 191.

18. But throughout his employment, Southern Cross failed to timely pay Sylvester his wages within seven calendar days after the end of the week in which he earned such wages.

19. Instead, Southern Cross paid Sylvester on a bi-weekly basis in willful violation of the NYLL.

20. Sylvester brings this class action on behalf of himself and other similarly situated Southern Cross Hourly Manual Workers in New York whom Southern Cross failed to timely pay their lawfully earned wages.

21. Southern Cross failed to timely pay each of these manual workers their wages within seven calendar days after the end of the week in which they earned such wages.

22. Instead, Southern Cross paid each of these manual workers on a bi-weekly basis in willful violation of the NYLL.

23. The putative class of similarly situated employees is defined as:

> **All employees who worked for Southern Cross in New York as hourly Service Line Technicians, Utility Surveyors, Utility Locators, Damage Prevention Specialists, and/or similar manual labor jobs within the meaning of NYLL § 191 who were not paid on a weekly basis at any time during the past 6 years and 228 days[1] from the filing of this Complaint through the date of final judgment in this matter (the "Hourly Manual Workers").**

24. The Hourly Manual Workers can be readily ascertained from Southern Cross's business and personnel records.

---

[1] This class period is due to Governor Cuomo's Executive Orders that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for a total of 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

25. Southern Cross is a Georgia limited liability company headquartered in Peachtree Corners, Georgia.

26. Southern Cross is registered to do business in the State of New York.

27. Southern Cross may be served through its registered agent: **C T Corporation System, 28 Liberty Street, New York, NY 10005**

28. At all relevant times, Southern Cross was, and is, a covered "employer" within the meaning of the NYLL.

29. Indeed, at all relevant times, Southern Cross employed Sylvester and the other Hourly Manual Workers as manual laborers in New York.

30. At all relevant times, Southern Cross has maintained control, oversight, and direction over Sylvester and the other Hourly Manual Workers, including timekeeping, payroll, and other employment practices that applied to them.

31. Southern Cross applies the same employment policies, practices, and procedures to all the Hourly Manual Workers in its operation, including policies, practices, and procedures with respect to payment of wages.

## FACTS

32. Southern Cross "provide[s] the utility industry with many routine field services, including leak detection, AMI/AMR installation and maintenance, standard meter services, regular field services, pipeline integrity, and related services."[2]

33. To meet its business objectives, Southern Cross employs manual workers, including Sylvester and the other Hourly Manual Workers, to provide such services to its clients.

---

[2] https://southerncrossinc.com/utility-field-services-about-u-s/ (last visited March 7, 2024).

4

34. While exact job duties and precise locations worked may differ, Sylvester and the other Hourly Manual Workers are all subjected to Southern Cross's same or similar illegal policies for similar work.

35. For example, Sylvester worked for Southern Cross as a Service Line Technician from approximately September 2021 until December 2021.

36. Throughout his employment, over 25% of Sylvester's duties were physical tasks, including but not limited to: walking, climbing, and crawling around assigned areas, carrying door tags to place on homeowners doors to alert them Southern Cross would need to access their property to carry out various utility services, disposing utility waste in dumpsters, building schematics for training purposes, and standing or otherwise being "on his feet" for extended periods of time.

37. Despite regularly spending more than 25% of his shift performing these physical tasks, Southern Cross failed to timely pay Sylvester his earned wages.

38. Instead, Southern Cross paid Sylvester on a bi-weekly basis.

39. As a result of Southern Cross's untimely wage payments, Southern Cross underpaid Sylvester for the first seven days of each bi-weekly pay period throughout his employment in New York.

40. Thus, Southern Cross paid Sylvester on an untimely basis in willful violation of the NYLL.

41. In accordance with his offer letter from Southern Cross, Southern Cross untimely paid Sylvester his lawfully earned wages every other week during his employment:



42.     In this regard, Southern Cross failed to timely pay Sylvester his wages earned not later than seven days after he earned such wages as required by NYLL § 191(1)(a) for every other week beginning September 28, 2021, through the end of his employment on December 1, 2021.

43.     As a result of Southern Cross's untimely wage payments, Southern Cross underpaid Sylvester every other week across this entire period.

44.     Moreover, Southern Cross's underpayments denied Sylvester the time-value of his earned wages. *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, --- F. Supp. 3d. ---, 2023 WL 4457911, at *7 (W.D.N.Y. July 11, 2023) (holding an employee's "lost time value of his wages" from being paid late was an injury in fact).

6

45. For example, Sylvester was unable to invest, save, or purchase utilizing the wages he earned during the first seven days of each bi-weekly pay period throughout his employment.

46. Southern Cross uniformly subjects its other Hourly Manual Workers to the same illegal policies it imposed on Sylvester.

47. Indeed, the other Hourly Manual Workers perform the same or similar physical job duties as Sylvester.

48. Like Sylvester, over 25% of the other Hourly Manual Workers' duties are physical tasks, including but not limited to: walking, climbing, and crawling around assigned areas while carrying utility locating equipment (e.g., ground-penetrating radar detectors, GPS, paint cans, flags, etc.) to detect underground utilities; marking the locations of underground utilities by painting symbols on, and inserting flags into, the ground; assisting construction crews with digging ditches; disposing of utility waste; building schematics for training purposes; placing door tags on homeowners' doors; replacing and repairing gas meters and gas lines; reading gas meters; and standing or otherwise being "on their feet" for extended periods of time.

49. But like Sylvester, despite regularly spending more than 25% of their shift performing these physical tasks, Southern Cross fails to timely pay its other Hourly Manual Workers their earned wages.

50. Instead, like Sylvester, Southern Cross uniformly pays its other Hourly Manual Workers on a bi-weekly basis.

51. As a result of its untimely wage payments, Southern Cross uniformly underpays its Hourly Manual Workers for the first seven days of each bi-weekly pay period.

52. Thus, like Sylvester, Southern Cross also uniformly pays its Hourly Manual Workers on an untimely basis in willful violation of the NYLL.

53. And, like Sylvester, Southern Cross's underpayments similarly deny the other Hourly Manual Workers the time-value of their money, as they are unable to invest, save, or purchase utilizing the wages they earned and are owed during each underpaid workweek.

54. Accordingly, because Southern Cross uniformly underpays Sylvester and its other Hourly Manual Workers for every other workweek it pays their lawfully earned wages after more than seven days within the time they complete their work, Southern Cross violated the NYLL.

### SOUTHERN CROSS'S NYLL VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF NEW YORK LAW

55. Sylvester incorporates all other paragraphs by reference.

56. Southern Cross knows it is subject to the NYLL and its supporting regulations, including the timely payment of wages provisions.

57. Southern Cross knows the NYLL required it to pay manual workers their lawfully earned wages weekly and not later than seven calendar days after the end of the week in which such wages are earned.

58. Southern Cross knows Sylvester and its other Hourly Manual Workers regularly spent more than 25% of their shift performing physical tasks.

59. In other words, Southern Cross knows, should have known, or recklessly disregards whether Sylvester and the other Hourly Manual Workers were "manual workers" entitled to weekly pay under the NYLL.

60. Nonetheless, Southern Cross does not pay Sylvester and its other Hourly Manual Workers their lawfully earned wages within seven calendar days after the end of the week in which they earned such wages.

61. Instead, Southern Cross pays Sylvester and its other Hourly Manual Workers on a bi-weekly basis.

8

62. In other words, Southern Cross knows, should have known, or recklessly disregards whether it failed to timely pay Sylvester and the other Hourly Manual Workers their lawfully earned wages in violation of the NYLL.

63. Southern Cross's failure to timely pay Sylvester and its other Hourly Manual Workers their lawfully earned wages is neither reasonable, nor is Southern Cross's decision to pay these manual workers on a bi-weekly basis made in good faith.

64. Southern Cross knows, should have known, or recklessly disregards whether its conduct described in this Complaint violates the NYLL.

65. Southern Cross knowingly, willfully, and/or with reckless disregard carried out its illegal policies that systematically deprived Sylvester and the other Hourly Manual Workers of their lawfully earned wages in violation of the NYLL.

66. In sum, Southern Cross's violations of the NYLL are willful, carried out in bad faith, and caus significant damage to Sylvester and the other Hourly Manual Workers.

## CLASS ACTION ALLEGATIONS

67. Sylvester incorporates all other paragraphs by reference.

68. Like Sylvester, the other Hourly Manual Workers are uniformly victimized by Southern Cross's bi-weekly pay scheme.

69. Other Hourly Manual Workers worked with Sylvester and indicated they were paid in the same manner, performed similar physical work, and were subject to Southern Cross's same illegal bi-weekly pay scheme.

70. Based on his experience with Southern Cross, Sylvester is aware Southern Cross's illegal practices were imposed on the other Hourly Manual Workers.

9

71. Sylvester and the other Hourly Manual Workers have all been injured in that they have been compensated in an untimely manner due to Southern Cross's common policies, practices, and patterns of conduct.

72. Indeed, Southern Cross's company-wide policies and practices affected Sylvester and the other Hourly Manual Workers similarly.

73. And Southern Cross benefited from the same type of unfair and/or wrongful acts as to each Hourly Manual Worker.

74. The putative class of Hourly Manual Workers includes more than 100 members.

75. Thus, the putative class of Hourly Manual Workers is so numerous that the joining of all class members in one lawsuit is not practical.

76. The Hourly Manual Workers are similarly situated in the most relevant respects.

77. Even if their precise job titles, exact duties, and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to their lawfully earned wages.

78. Rather, the Putative Class is held together by Southern Cross's bi-weekly pay scheme, which systematically deprived Sylvester and the Hourly Manual Workers of their lawfully earned wages.

79. Southern Cross's records reflect the wages each Hourly Manual Worker earned each workweek.

80. Southern Cross's records also reflect it failed to pay its Hourly Manual Workers their lawfully earned wages within seven days of the time they completed their work.

81. The untimely wages owed to Sylvester and the other Hourly Manual Workers can therefore be calculated using the same formula applied to the same records.

82. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Southern Cross's records, and there is no detraction from the common nucleus of liability facts.

83. Therefore, the issue of damages does not preclude class treatment.

84. And Sylvester's experiences are therefore typical of the experiences of the other Hourly Manual Workers.

85. Sylvester has no interest contrary to, or in conflict with, the interests of other Hourly Manual Workers that would prevent class treatment.

86. Like each Hourly Manual Worker, Sylvester has an interest in obtaining the untimely wages and other damages owed to them under New York law.

87. Sylvester and his counsel will fairly and adequately represent the Hourly Manual Workers and their interests.

88. Indeed, Sylvester retained counsel with significant experience in handling complex class action litigation.

89. A class action is superior to other available means for fair and efficient adjudication of this lawsuit.

90. Absent this class action, many Hourly Manual Workers will not obtain redress for their injuries, and Southern Cross will reap the unjust benefits of violating New York labor laws.

91. Further, even if some of the Hourly Manual Workers could afford individual litigation against Southern Cross, it would be unduly burdensome to the judicial system.

92. Indeed, the multiplicity of actions would create a hardship for the Hourly Manual Workers, the Court, and Southern Cross.

93. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Manual Workers' claims.

94. The questions of law and fact that are common to each Hourly Manual Worker predominate over any questions affecting solely the individual members.

95. The common questions of law and fact include: (1) whether Southern Cross compensated Sylvester and the other Hourly Manual Workers their earned wages on bi-weekly basis; and (2) whether Southern Cross paid Sylvester and the other Hourly Manual Workers their lawfully earned wages on an untimely basis.

96. Sylvester knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

97. As part of its regular business practices, Southern Cross intentionally, willfully, and repeatedly violated the NYLL with respect to Sylvester and the other Hourly Manual Workers.

98. Southern Cross's illegal policies uniformly deprived Sylvester and the other Hourly Manual Workers of the lawfully earned wages they are owed under New York law.

<u>CAUSE OF ACTION</u>

**FAILURE TO PAY TIMELY WAGES UNDER THE NYLL**
**(CLASS ACTION)**

99. Sylvester incorporates all other paragraphs by reference.

100. Sylvester brings his NYLL claims as a class action on behalf of himself and the other similarly situated Hourly Manual Workers pursuant to FED. R. CIV. P. 23.

101. Section 191 of the NYLL requires employers, like Southern Cross, to pay manual workers, including Sylvester and the other Hourly Manual Workers, their lawfully earned wages weekly and not later than seven calendar days after the end of the week in which such wages are earned. *See* NYLL § 191(1)(a).

102. NYLL § 191's timely payment of wages provisions and its supporting regulations apply to Southern Cross and protect Sylvester and the other Hourly Manual Workers.

12

103. Southern Cross violated, and is violating, the NYLL by failing to pay Sylvester and the other Hourly Manual Workers on a timely basis. *See* NYLL § 191(1)(a).

104. Southern Cross's unlawful conduct harmed Sylvester and the other Hourly Manual Workers by depriving them of the earned wages they are owed.

105. In violating the NYLL, Southern Cross acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

106. Thus, Southern Cross's NYLL violations with respect to Sylvester and the other Hourly Manual Workers were "willful" within the meaning of NYLL § 198.

107. In *Caul v. Petco Animal Supplies, Inc*, Judge Kovner of the Eastern District of New York held the NYLL's liquidated damages provisions are "designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." No. 20-CV-3534 (RPK)(SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal denied*, No. 20-CV-3534 (RPK)(SJB), 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).

108. Accordingly, Sylvester and the other Hourly Manual Workers are entitled to recover the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

### JURY DEMAND

109. Sylvester demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Sylvester, individually and on behalf of the other Hourly Manual Workers, seeks the following relief:

    a.    An Order designating this lawsuit as a class action and certifying the putative class of Hourly Manual Workers pursuant to FED. R. CIV. P. 23;

      b.      An Order certifying Sylvester as the Class Representative and designating his counsel as Class Counsel to represent the interests of the Hourly Manual Workers;

      c.      Liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

      d.      Pre- and post-judgment interest at the highest applicable rates;

      e.      Reasonable attorneys' fees and costs of the action; and

      f.      Such other relief as this Court shall deem just and proper.

Dated: March 11, 2024

Respectfully submitted,

**PELTON GRAHAM LLC**

By: /s/ Brent E. Pelton
    Brent E. Pelton
111 Broadway, Suite 1503
New York, New York 10006
Phone: (212) 385-9700

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR SYLVESTER AND THE HOURLY MANUAL WORKERS**